**LLOYDS BANK PLC, Plaintiff,**

v.

**Philip M. LYNCH, Defendant,**

and

**Healthcare Technology, Inc., Defendant–Intervenor.**

**No. C86–2675.**

United States District Court, N.D. Ohio, E.D.

Aug. 5, 1988.

Opinion on Motion to Reconsider Aug. 12, 1988.

Frank A. DiPiero, Richard W. McLaren, Jr., Squire Sanders & Dempsey, Cleveland, Ohio, for plaintiff.

Ronald H. Isroff, Morton L. Stone, Ulmer & Berne, Cleveland, Ohio, Richard G. Lareau, Mark P. Wine, Minneapolis, Minn., for defendants.

## ORDER

BATTISTI, Chief Judge.

Before this Court is Plaintiff's motion for summary judgment on the counterclaims of Defendant Lynch and Intervenor Healthcare Technology. Both sides have fully and ably briefed this matter and oral arguments were held to allow even further opportunity to highlight the appropriateness of granting or denying the instant motion.

The facts specific to this case also have been well developed by the parties in the motion for summary judgment and the response thereto. As a result, repetition of them here is unnecessary. Notable, however, is that general agreement exists as to the series of events that led to the instant action even though certain questions remain. The remaining questions include those generated by the initial complaint, most importantly whether the $100,000 which Lloyds mistakenly wired back to Lynch must be returned, and that presented by the counterclaim, whether Lloyds failure to pass along the "Details of Payment" information contained in the S.W.I.F.T. transfer gives rise to liability for all consequential damages resulting from the failure of the proposed merger between Healthcare Technology and Interleukin–2, Inc.

As a motion for summary judgment, this Court must determine whether there is a "genuine issue as to any material fact" which would preclude judgment as a matter of law. Fed.R.Civ.P. 56. Defendant correctly notes that this procedural device must be carefully utilized for it "operates to deny a litigant his day in court." *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979).

However, when no factual issues for resolution by the trier of fact are presented, a Court must not ignore its obligation to render a determination as a matter of law and thereby adjudicate the claim or claims subject to summary disposition.

Since Plaintiff's motion for summary judgment only runs to the counterclaim, not to the initial claim, the basis in law for establishing or rejecting Lloyds potential liability to the Defendants is all that has been developed by the parties at this juncture. Specifically, Lynch and Healthcare Technology seek to pin responsibility for their failure to consummate the IL–2 merger on Lloyds. They rest their argument on the bank teller's failure to deliver a cryptic details of payment message * which accompanied the international wire transfer, requested by Lynch, to Maximillian Baron de Clara. It is asserted in the counterclaim that this failure constitutes a breach sufficient to give rise to liability for the difference in the present market value of 24,444,-444 shares of IL–2 stock which allegedly was lost by the failure of the delivery of the message. This prayer exceeds $100,-000,000.

Before moving to the actual determination of whether summary judgment is appropriate at this juncture, it is worth considering whether the delivery of this message would in fact have consummated the merger transaction so that breach thereafter would have given Defendants an action against IL–2. Although not directly before this Court, the fact that Defendants seem to try to pin such extraordinary liability onto a foreign correspondent bank for a de minimus clerical failure, when they would not appear to have any ability to secure satisfaction from the party with whom they were attempting to merge, is clearly relevant when such a claim is asserted in response to the bank's request for return of funds which allegedly have been improperly withheld. Defendants baldly assert that Lloyds is responsible for the merger's failure. However, considering

---

* The message read: "INTER LEUKIN 2 FIRST OF FIVE INSTALLMENTS OF USD 100,000.00 EACH".

the facts taken as a whole, it is incomprehensible that after such care as to draft and circulate a proposed Memorandum of Agreement, Plaintiff Lynch would attempt to "close" the transaction by such a method as the detail of payment line in a wire transfer.

Nonetheless, this Court is presented with Defendants' claims against Plaintiff and must determine whether a trial is required or whether summary disposition is appropriate. It has been argued that a material question of fact exists regarding Lloyds' duty to Defendants with respect to the wire transfer. Although Defendants' arguments to impose a duty and liability for all resulting damages were finely spun, they are not sufficient to prevail. Duty of care is a matter of law to be determined by the Court not by the trier of fact. As such, nothing precludes summary judgment for Plaintiff if the law so warrants.

Turning to the actual legal question of Lloyds' duty, this Court must determine whether the consequential damages allegedly suffered by Defendants were reasonably foreseeable so as to make appropriate the imposition of responsibility on Lloyds to avoid them or face liability thereafter. A glance at the specific aspects of this case reveals that in order for liability to be imposed, it must have reasonably foreseen the consequences of its failure to properly convey the detail of payment message. Specifically, in order to impose responsibility for failure of the underlying merger of Healthcare Technology and IL–2, Lloyds must have reasonably foreseen that its failure with respect to the S.W.I.F.T. transfer would lead to the resulting damage.

Although Defendants would undoubtedly like this Court to find reasonable foreseeability of the failure of the underlying transaction present here, this is clearly not the case. Lloyds was neither a party to nor intimately involved in the failure of the underlying merger for which is it now is asked to atone. Lloyds was retained as a correspondent bank as part of a routine international money transfer. This role is not one in which Lloyds was engaged to play a meaningful part of the merger's consummation. The fact that Defendants, with the benefit of hindsight, assert that this wire transfer was the critical step in their transaction is not sufficient to find and impose foreseeable liability on Lloyds since the bank was neither informed of the special circumstances surrounding this transfer nor asked to play a role which would alert it to the risks inherent in a failure on their part.** Lynch could have employed Lloyds in another capacity, providing the bank with independent knowledge of the underlying transaction and an understanding of the bootstrapping of the deal which was being attempted by the transfer's detail of payment provision. This would have alerted Lloyds to the potential liability as well as providing it an opportunity to independently evaluate the attendant risks and to charge an appropriate fee. This was not done. Rather, after the fact, the error of Lloyds has been seized upon as the *sine qua non* for failure of the deal. As a matter of law, the consequential damages which Defendants seek to impose on Lloyds can not be deemed reasonably foreseeable. Accordingly, Plaintiff's motion for summary judgment

** Defendants' assertion that "as part of his general knowledge, a reasonable banker should also be aware that in the great majority of business transactions, the manner of payment is of crucial importance and that the failure to make payment in the manner directed could jeopardize the deal", Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 11, is not founded in law or policy. Such general foreseeability can not be read into each and every wire transfer of funds as it has been long established that consequences for which damages are sought must be reasonably foreseeable. Furthermore, as a matter of policy the same result must be achieved. To subject every bank to liability which is so far in excess of the sum transferred and millions of times in excess of any fees charged for the transfer would be wholly inappropriate when the bank had no idea of, and could not even practicably assess, the risk. To allow imposition of a duty of care here, by labeling such consequences reasonably foreseeable, would lead to results in the industry that are disproportionately detrimental to bankers initially and, even worse, ultimately detrimental to all who utilize wire transfer services.

on the counterclaim is appropriate and is hereby granted.

IT IS SO ORDERED.

## ON MOTION TO RECONSIDER

Defendant Lynch and Defendant–Intervenor Healthcare Technology, Inc. have moved this Court to reconsider its Order of August 5, 1988. In that ruling it was determined that summary judgment for Plaintiff on Defendants' counterclaim was appropriate. The determination that Plaintiff must prevail as a matter of law on the counterclaim was reached because the liability which Defendants sought to impose was not reasonably foreseeable.

Through the instant motion to reconsider, Defendants encourage the Court to accept their argument that a "bank is put on notice that failure to transmit the [S.W.I.F.T. Details of Payment] instructions could interfere with a business transaction and result in damages * to the ordering customer." Affidavit of Mark P. Wine, ¶ 4. To support their position, Defendants quote the S.W.I.F.T. transfer procedure manual, procured from Lloyds through discovery, and apparently believe that the mere existence of a procedure whereby the information is supposed to be conveyed to the beneficiary customer is sufficient to impose unenvisionable, if not limitless, liability on the bank for failure in one small regard on a routine wire transfer. The substance of their argument appears to be that every wire transfer has the possibility of an underlying transaction and that here Lloyds must be prepared to bear astronomical losses because they failed to communicate even a cryptic message that could not have closed the merger Defendants hoped to consummate.

Admittedly, some damage is foreseeable when a bank fails to properly transmit the details of payment information. But, Defendants do not seek reasonably foreseeable losses here. Rather, Defendants counterclaimed that the correspondent bank which handles a routine wire transfer must now bear the risk of a $100,000,000 merger despite the fact that the bank was never informed of the critical role it was charged with playing.

Since a Court must determine whether the specific losses allegedly suffered were reasonably foreseeable, not whether *any* loss was foreseeable, the fact that some form of loss might be envisioned by a bank's failure to deliver the Details of Payment language does not make the tremendous losses Defendants seek to impose here recoverable. Before Lloyds may be called upon to pay for the failure of the merger, it must have been able to gauge its exposure. Defendants never afforded Lloyds that chance but rather now, with the benefit of hindsight, seek to put Lloyds in a role it never engaged (or paid) the bank to take.

In light of all that this Court has observed with respect to the instant action. Defendants' present argument is not surprising. Possessed of $100,000 which Lloyds mistakenly delivered to Lynch, every effort is being made to suggest a reason, in law, why it may be kept.

Almost simultaneous with Defendants' motion for reconsideration, Plaintiff moved for leave to file a motion for summary judgment and for a continuance of trial. Although such a motion may well have been proper at an earlier stage of the proceedings, this Court does not find it appropriate to grant such leave days before the trial. Recognizing that the burdens present when considering a motion for summary judgment are high, since the granting of such a motion would deny Defendants a trial, this court will not reach to adjudicate this matter on the pleadings when proof is promptly forthcoming. Therefore, despite the fact that no material issues of fact are readily apparent due to the absence of briefing, it would not be wise at this juncture to forestall the trial

---

* An interesting observation that runs to the heart of the foreseeability issue is that even Defendants do not strenuously argue that the specific damages they presently seek were foreseeable but merely that some form of "damages" are foreseeable. As stated in this Court's Order of August 5, 1988, neither the law nor sound policy can support such sweeping liability on banks for clerical errors of the type present in the case.

when some material facts which would preclude a summary judgment on the original claim may well be demonstrated. Accordingly, Plaintiff's motion is hereby denied.

The Court is prepared to resolve at trial the claims which remain. The procedural maneuvering by Plaintiff in an attempt to summarily dispose of this matter is not timely. Trial will proceed Wednesday, August 17, 1988 at 10:00 a.m.

IT IS SO ORDERED.